UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BELUGA CHARTERING GMBH
                                        Plaintiff,

                                                                    08 Civ. 4896

        - against -

KOREA LOGISTICS SYSTEMS INC.                          **MEMORANDUM IN OPPOSITION**
                                        Defendants       **TO DEFENDANT'S MOTION TO**
-----------------------------------------------------------X   **VACATE ATTACHMENT**


        Plaintiff, Beluga Chartering GmbH ("Beluga"), opposes defendant, Korea

Logistics Systems' ("KLS"), motion to vacate this Court's Ex Parte Order for Process of

Maritime Attachment.  From a review of the initial documents filed with this Court, it is

clear that Beluga has validly attached funds in compliance with Rule B of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  For

the reasons discussed below, KLS' motion to vacate must be denied because Beluga has a

prima facie admiralty claim against KLS;  KLS is a company not "found" within the

Southern District of New York;  KLS's property has been attached in the Southern

District of New York;  and there is no statutory or maritime law bar to the attachment.

## I.      PROCEDURAL BACKGROUND

        On May 28, 2008, Beluga filed a Verified Complaint under Rule B against KLS

for damages sustained due to KLS' breach of charter.  The Complaint also sought

security for its claims under Rule B.  An Ex Parte Order for Process of Maritime

Attachment was issued by this Court on that same date ordering that any garnishees

within the Southern District of New York holding tangible or intangible property of KLS

to restrain such property up to an amount including $1,101,615.20.

On June 26, 2008, Beluga received notification from Deutsche Bank advising that funds for KLS in the amount of $136,297.13 had been restrained pursuant to the Process of Maritime Attachment & Garnishment issued by this Court.[1] On June 27, 2008, Beluga received notification advising that additional funds of KLS had been attached in the amount of $297,801.37.[2] Again on June 30, 2008, KLS' funds in the amount of $79,980.00 were restrained by Standard Chartered Bank.[3] The amount of funds restrained to date total $514,078.50. Subsequently, Beluga notified KLS of the attachments and KLS filed a motion to vacate the attachments on July 15, 2008, which motion Beluga now opposes.

## II.    FACTUAL BACKGROUND

As set forth in Beluga's Complaint, this matter arises from a breach of KLS's duties as a voyage charterer for damages occasioned to the M/V BELUGA CONSTITUTION. Pursuant to the terms of the charter, Beluga was to carry a certain cargo of construction material on KLS' behalf from Thailand to various ports, ultimately discharging in Trinidad and Tobago. At no point was this vessel to travel to or from the United States. As a result of KLS' negligence, breach of charter, and failure to ensure that this cargo was properly loaded in a safe condition, Beluga has suffered and will continue to suffer damages.

## III.    LAW AND ARGUMENT

A.    Standard of Review/Burden of Proof

As KLS properly notes, this Court has previously provided:

---

[1] *See* Affirmation of Lili F. Beneda, attached as Exhibit 1.
[2] *Id.*
[3] *Id.*

> [I]n a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show not only that it has met the filing requirements of Rules B and E, but also that: (1) it has a prima facie admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is not statutory or maritime law bar to the attachment.  At the Rule E (4)(f) hearing, the defendant can attack 'the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings'.  If the plaintiff can meet his burden, the defendant may show that vacatur of the attachment would still be appropriate under certain limited circumstances, including when '(1) the defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.'  *OGI Oceangate Transportation Co., Ltd., v. R.P. Logistics Pvt Ltd., et. al.* 2007 U.S. Dist. Lexis 46817, 6-7 (S.D.N.Y. 2007), J. Sweet, presiding.  (*internal citations omitted*).

As stated above, KLS has not attacked the sufficiency of Beluga's filing requirements; rather it: 1) disputes that Beluga has made a prima facie claim in admiralty; 2) disputes that KLS can be found in the Southern District of New York; and 3) submits that arbitration in London is a more convenient forum where, assumedly, KLS is subject to suit.  Beluga addresses each in turn; however, at the outset Beluga notes that KLS has submitted no evidence to this Court which has been properly authenticated or establishes that Beluga's attachments should be set aside.  *See e.g. New York ex rel Spitzer v. St. Francis Hosp.,* 94 F.Supp.2d 423, 426 (S.D.N.Y.2000) ("Where a party wishes to have a court consider documents which are not yet part of the court's record, the documents must be attached to and authenticated by an appropriate affidavit and the affiant must be a competent witness through whom the documents could be received into evidence at trial.").  Accordingly, this Court should not consider KLS' evidence, which has been improperly admitted into the record.

B.    Beluga has made a prima facie admiralty claim

In order to sustain an attachment, a plaintiff, such as Beluga, "must demonstrate that it has 'an *in personam* claim against the defendant which is cognizable in admiralty…In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." *Id.* at 7-8.  Supplemental Rule E(2)(a) provides that:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading. *See Oceangate,* at p. 9.

As admitted by KLS in its motion/letter to this Court, the "underlying dispute is based upon a charter party between Beluga as an operator of a vessel and KLS as a charterer of a vessel." *See Letter to J. Sweet,* 15 July 2008, p. 2.  It is without doubt that such charters are characterized as maritime contracts and disputes arising from them fall within the ambit of this Court's admiralty jurisdiction.  Beluga's damages in this case arise from KLS actions or inactions that resulted in a breach of the charter.  From the complaint and KLS' response, it is clear that the complaint contains allegations of particularity which allowed KLS to "to commence an investigation of the facts and to frame a responsive pleading." *Oceangate* at 9.

While KLS has alleged defenses including "act of God, or Beluga's reckless sailing of the vessel during and through [a] tropical typhoon" (which Beluga denies), Beluga, however, "is not required to prove its case, it must simply meet a prima facie standard."  *Proshipline Inc.. v. Aspen Infrastructures Ltd.* 533 F.Supp.2d 422 (S.D.N.Y.,2008) J. Sweet presiding.  The prima facie standard is also the same standard

to be applied in pre-discovery motions to dismiss, filed under Rule 12(b) of the Federal Rules of Civil Procedure. *See e.g. Ball v. Metallurgie Hoboken-Overpelt, S.A.* 902 F.2d 194, 196-197, (2.Cir. 1990). When a motion to dismiss is made under Rule 12(b)(6), for example, the issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *A.P. Moller-Maersk A/S v. Ocean Express Miami,* 550 F.Supp.2d 454 (S.D.N.Y.,2008), J. Sweet presiding.

Similarly, in this matter, KLS' alleged substantive defenses are beyond the scope of this vacatur inquiry and are instead the proper subject of arbitration in London, to be decided under English law as agreed by all parties. Beluga has every intention of pursuing arbitration against KLS in London, which is precisely why it requires security and is also one reason this Court granted the order KLS now seeks to vacate. While Beluga can and will prove the legitimacy of its claims by a preponderance of the evidence either in London, or in the instant action, at this point it need only demonstrate that it maintains prima facie claims against KLS in admiralty, which it has undoubtedly alleged. KLS cannot vacate any attachment on these grounds, and its attempt to do so must fail.

C.      KLS cannot be found in the District

Rule B provides, in pertinent part:

(1) **When Available; Complaint, Affidavit, Judicial Authorization, and Process.** In an *in personam* action:
(a) If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property-up to the amount sued for-in the hands of garnishees named in the process. (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district.

In order to determine if the defendant can be "found within the district", the Second Circuit has held that the Rule requires "a two-pronged inquiry: First, whether [the defendant] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir.1963). "In other words, not only must the defendant be able to accept process, but the defendant must also "be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *VTT Vulcan Petroleum, S.A. v. Langham-Hill Petroleum,* 684 F.Supp. 389, (S.D.N.Y.,1988); *citing Seawind* at 581-82. Here, KLS cannot be found within the District for either purpose and its arguments that it can are quite curious.

In its letter/memorandum, KLS does not allege that it actually conducts or conducted business within this District at the time of attachment sufficient to subject it to the jurisdiction of this Court. Instead, it merely alleges that its "website shows that it has an office in New York", which "provides exactly the same address and contact information for KLS' designated agent for service of process." *See Letter to J. Sweet*, 15 July 2008, p. 3.[4] The fact that KLS' website lists an office in New York is of little consequence when the company itself does not in fact conduct business in New York. Although Smart Cargo Service and K.L.S. America Inc. are companies listed with New York's Secretary of State, which companies operate at 145-11 155th St., Jamaica, New York, 11434, these companies are separate and apart from KLS, which maintains no

---

[4] Once again, Beluga notes that the attached exhibit No. 5 is not in the English language and no translation is provided. This exhibit, indeed all exhibits offered into the record by KLS, should be stricken from the record because they are not properly authenticated as required by the Federal Rules.

presence in this District and is not registered to do business within the State of New York.[5]

For reasons fully discussed below, Beluga disputes that KLS actually maintains an office in New York or that it has a designated agent for service of process here. For purposes of this motion, however, assuming that KLS has properly "designated a legal agent in Jamaica, New York"[6] this still does not prove that KLS can be found within the Southern District of New York because KLS cannot prove, nor has it even alleged, that it has "engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Vulcan Petroleum,* 684 F.Supp. 389. Furthermore, Jamaica is located in Queens County, which is situated in another federal district and not the Southern District of New York. Even if KLS' allegations that is can be found in Jamaica are true, it is clear that KLS is not present within this District under the strict language of Rule B.

Despite its assertions, KLS cannot be found in this District or Queens County. To support its allegations, KLS points to a tariff it has filed with the Federal Maritime Commission ("FMC"), its registration as a non-vessel operating common carrier ("NVOCC"), and the fact that it has designated Smart Cargo Service as an agent for the limited purpose of complying with FMC regulations. Even if true, these facts are inapposite. This case does not involve carriage to or from the United States, and, therefore, KLS' status as an NVOCC is of no relevance to these proceedings because no

---

[5] See NYS Department of State Division of Corporations Printout attached as Exhibit 2, and available at http://appsext8.dos.state.ny.us/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=2666587&p_corpid=2642318&p_entity_name=%4B%2E%4C%2E%53%2E&p_name_type=%25&p_search_type=%42%45%47%49%4E%53&p_srch_results_page=0
[6] *See Letter to J. Sweet,* 15 July 2008, p. 3

FMC regulations are implicated by this lawsuit.[7]  While KLS may act as an NVOCC in other business it is engaged in, here it is being sued as a charterer for breach of a charter party.

The fact that KLS "has a bond on file with the FMC in the amount of $150,000.00" is also irrelevant and without consequence to any matter presented here. *See Letter to J. Sweet,* 15 July 2008, p. 3.  Such a "bond, insurance or other surety covers the transportation-related activities of an ocean transportation intermediary <u>only when acting as an ocean transportation intermediary.</u>" 46 C.F.R. § 515.21 (*emphasis added*). The irrelevant nature of these *non sequitors* is belied by KLS' admission that it "cannot pass judgment on whether Beluga's claim is indeed covered by the bond". *Id.*  It cannot so pass judgment, because these arguments are merely red herrings that have no relevance to this inquiry.

KLS's designation of an agent for the purpose of accepting service of process is limited to cases in which its compliance with the FMC or status as an NVOCC operating from the United States is implicated.  As the tariff states, KLS' foreign commodity tariff applies between "ports and points in Asia" and "ports and points in the United States." *See Letter to J. Sweet*, 15 July 2008, Attachment No. 4.  Smart Cargo Service's agency designation in Jamaica is not a general agency designation for all purposes, but is instead limited to situations specifically contemplated when carriage is undertaken between points and ports between Asia and the United States or when KLS' compliance with FMC regulations or status as an NVOCC come into play.  Smart Cargo's designation as a "registered agent" is irrelevant to the issue currently before the Court because Smart

---

[7] For purposes of compliance with FMC regulations, "Non-vessel-operating common carrier services refers to the provision of transportation by water of cargo between the United States and a foreign country for compensation without operating the vessels by which the transportation is provided…" 46 C.F.R. § 515.2(l)

Cargo Service is not an agent for purposes related to Rule B. Such agency, even if assumed to be true, does not mean KLS is "found" within this District because KLS cannot prove that it "has engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Vulcan Petroleum* 684 F.Supp. 389.

E.    London arbitration does not preclude attachment for security

Beluga does not dispute that it has initiated arbitration in London.  As KLS admits, London arbitration was agreed to in the charter and Beluga is pursuing its claims against KLS there, despite the fact that KLS has failed to respond to any arbitration demands.  It is precisely KLS' failure to respond and participate in arbitration that necessitates Beluga's need for security both here and there and Beluga has not waived any of its admiralty remedies merely because it has pursued KLS in London arbitration.

In addition to providing security for the underlying claims filed with this Court, Rule B, in conjunction with the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, allows Beluga to attach funds for security in arbitration proceedings. 9 U.S.C.A. § 8 of the Federal Arbitration Act provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

Thus, under the statute, an aggrieved party is allowed the benefit of security obtained by an attachment, and arbitration becomes a phase of the suit in admiralty. Essentially, this statute permits a party having an admiralty cause of action to commence

a suit in admiralty, despite an agreement to arbitrate, so that the property may be seized and held as security until arbitration is concluded. As the Supreme Court noted decades ago, by enactment of Section 8, "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court." *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 46 (1943).

In an international context, the same applies, but with reference to Convention on the Recognition and Enforcement of Foreign Arbitral Awards 9 U.S.C. § 201 *et. seq.*, instead of the Federal Arbitration Act. For example, in *Andros Compania Maritima, S.A. v. Andre & Cie., S.A.,* 430 F. Supp. 88 (S.D.N.Y. 1977), the Court held that retention of jurisdiction under the Federal Arbitration Act pending arbitration was not inconsistent with the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards or its implementing legislation, and that the parties' provision for arbitration abroad did not preclude resort to federal court or concomitant invocation of attachment remedies under the Federal Arbitration Act. *Id.*

This Court should deny KLS' motion and allow Beluga to proceed with its admiralty remedy of attachment while simultaneously proceeding with arbitration. Beluga does not dispute that this forum is any more or less convenient for the parties to resolve their disputes in London, but why this has any impact on Beluga's attachment is entirely unclear. From the foregoing, KLS cannot vacate this attachment on these grounds and their motion must be denied.

F.    <u>KLS' property is within the District; and there is not statutory or maritime law bar to the attachment.</u>

For the sake of completeness, Beluga notes that the last two requirements for attachment under Rule B are also met here.  The attached funds are within this District and are admittedly the property of KLS, constituting "KLS's payments to its foreign inland carriers." *See Letter to J. Sweet,* 15 July 2008, at p. 4.  Finally, KLS has not alleged any statutory or maritime law bar to the attachment.

## IV.    <u>CONCLUSION</u>

It is clear that Beluga has satisfied the straightforward requirements of Rule B for attaching assets.  Beluga has made prima facie claims in admiralty and has established that KLS cannot be found within this District.  Beluga is entitled to pursue its admiralty remedies while also pursuing arbitration in London.  Beluga has attached KLS' funds within this District and there is no statutory or maritime law bar to the attachment.  KLS, on the other hand, has failed to produce evidence which this Court can consider and has failed to prove that Beluga's attachments should be vacated.  For these reasons, Beluga request that this Court rule against KLS and in favor of Beluga.


Dated: New York, New York
       July 30, 2008

/s      *Jason P. Waguespack*
Jason P. Waguespack (La. Bar No. 21123)
*Admitted pro hac vice*
Michael J. Nicaud (La. Bar No. 29365)
*Admitted pro hac vice*
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Facsimile:   (504) 525-2456

Lili F. Beneda (LB 1879)

CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 894-6778
Facsimile: (212) 597-6721
COUNSEL FOR BELUGA CHARTERING GMBH

## CERTIFICATE OF SERVICE

I do hereby certify that on July 30, 2008, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, which will send a notice of electronic

filing to all participating counsel of record.

/s/ *Jason P. Waguespack*_____
JASON P. WAGUESPACK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BELUGA CHARTERING GMBH

                     Plaintiff,

     - against -

KOREA LOGISTICS SYSTEMS INC.

                   Defendant.

------------------------------------------------------------X

08 Civ. 4896 (RWS)

**AFFIDAVIT OF LILI F. BENEDA**
**IN OPPOSITION TO**
**DEFENDANT'S MOTION TO**
**VACATE**

I, Lili F. Beneda, affirm the following under penalty of perjury:

1.     I am an attorney licensed to practice before this Court and practice at the law firm of Condon & Forsyth LLP, attorneys for Plaintiff, Beluga Chartering GmbH ("Beluga");

2.     I submit this affirmation on behalf of Beluga, in opposition to the Motion to Vacate Attachment, filed by Defendant, Korea Logistics Systems Inc. ("KLS");

3.     On June 26, 2008, I instructed Deutsche Bank to restrain funds for KLS in the amount of $136,297.13 pursuant to the Process of Maritime Attachment & Garnishment issued by this Court;

4.     On June 27, 2008, I instructed Rawle & Henderson, on behalf of The Bank of New York Mellon, to restrain funds originated by KLS in the amount of $297,801.37 pursuant to the Process of Maritime Attachment & Garnishment issued by this Court;



EXHIBIT

1

5.    On June 30, 2008, I instructed Standard Chartered Bank to restrain funds

originated by KLS in the amount of $79,980.00 pursuant to the Process of

Maritime Attachment & Garnishment issued by this Court; and

6.    Timely notices of these restraints were provided to KLS in accordance with

the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or

Maritime Claims and this Court's local rules and practices.

Dated:    New York, New York
          July 28, 2008

_____
LILI F. BENEDA

Sworn to before me on this
_28th___ day of July, 2008

_____
Notary Public

MARY ANN ROONEY
NOTARY PUBLIC, State of New York
No. 31-4672706
Qualified in Queens County
Commission Expires May 31, 2010

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: K.L.S. AMERICA, INC.

Selected Entity Status Information

**Current Entity Name:** K.L.S. AMERICA, INC.
**Initial DOS Filing Date:** MAY 23, 2001
**County:** QUEENS
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
K.L.S. AMERICA, INC.
145-11 155TH STREET
JAMAICA, NEW YORK, 11434
**Chairman or Chief Executive Officer**
DONG IK LEE
145-11 155TH ST
JAMAICA, NEW YORK, 11434
**Principal Executive Office**
K.L.S. AMERICA, INC.
145-11 155TH ST
JAMAICA, NEW YORK, 11434
**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results                    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page



EXHIBIT
2