UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BELUGA CHARTERING GMBH
    Plaintiff,

08 Civ. 4896

- against -

KOREA LOGISTICS SYSTEMS INC.

    Defendants

**MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE ATTACHMENT**

------------------------------------------------------------X

    Defendant Korea Logistics Systems' ("KLS") replies to Plaintiff, Beluga Chartering GmbH's ("Beluga"), opposition to KLS' motion to vacate this Court's Ex Parte Order for Process of Maritime Attachment. For the reasons discussed below, KLS' motion to vacate must granted because Beluga has not demonstrated to this Court that it has a colorable prima facie admiralty claim against KLS, that KLS can be "found" within the Southern District of New York. In addition, KLS has indicated to Plaintiff that it will submit to in personam and subject matter jurisdiction if Plaintiff waives London arbitration, and that KLS's is a duly registered Non-Vessel-Operating Common Carrier with a bond and tariff on file with the Federal Maritime Commission ""FMC"), and, therefore, can be found within the Southern District of New York and with the United States.

    KLS does not dispute that on May 28, 2008, Beluga filed a Verified Complaint under Rule B against KLS for damages sustained due to KLS' breach of charter. The Complaint also sought security for its claims under Rule B. An Ex Parte Order for Process of Maritime Attachment was issued by this Court on that same date and ordered that any garnishees within the Southern District of New York hold tangible or intangible property of KLS, and to restrain any amount up to $1,101,615.20.

## II. <u>FACTUAL BACKGROUND</u>

The underlying dispute is based upon a charter party between Beluga as an operator of a vessel and KLS as a charterer of the vessel. Pursuant to the charter party, in November 2007, Beluga transported KLS's shipment from Map Taphud, Thailand and Masan, Korea to Point Lisas, Trinidad Tobago. During the voyage from Map Taphud to Masan, the vessel encountered heavy weather. The Statement of Sea Protest prepared and issued by the master of the vessel states that the vessel encountered a heavy weather while crossing South China Sea. See Declaration of N.S. Cho and Attachment No. 1 thereto.

Contrary to Plaintiff's assertions in its Opposition, KLS maintains that it was Plaintiff Beluga's contributory negligence, and admission in the Sea Protest prepared and issued by Begula's Master that ". . . notwithstanding all measures of good seamanship taken [by the Master and crew] some loss or damage might be caused to the said ship or her appurtenances or cargo or some other property on board **by reason of heavy weather**." Emphasis added. Id.

Beluga's Verified Complaint also admits that the vessel encountered a typhoon. See Beluga's Complaint ¶ 11. Beluga knew or should have known that a typhoon was expected in the vessel's route. However, the vessel sailed through a tropical typhoon, although the typhoon might have been forecasted. KLS believes that the only reason Beluga sailed through the expected typhoon was because the shorter the voyage, the more lucrative it would be for Beluga. If there was any damage to the vessel, it was the result of Beluga's own negligence.

Further, if there was any damage to the vessel, it was because of an act of God, for which KLS is not liable or responsible. For example, the pre and after loading survey at the port of Map Ta Phut states that:

2

<u>Cargo Condition Inspection</u>

Jointly together with the vessel's Chief Officer, we carefully inspected the condition of the aforesaid cargo prior to loading and found that all packages appeared to be in generally sound condition subject to customary for this type of cargo.

The survey report further states that:

<u>Lashing/Securing</u>

. . .

Jointly together with the vessel's Chief Officer and the Stevedore Foreman, we carefully inspected the stowage and lashing of the four shipment in cargo hold throughout the loading and we found the operation have to be carried out in a satisfactory way.

Stowage, [L]ashing and securing was carried out by professional stevedores under close supervision of all concerned parties, in an effective and efficient manner.

Map Ta Phut Survey Report. See Declaration of N.S. Cho and Attachment No. 2 thereto. The securing and lashing was performed at the port of loading under a joint supervision with the vessel's Chief Officer. If there was any damage to the vessel during the voyage, it resulted from an act of God or Beluga's reckless sailing of the vessel during and through the tropical typhoon.

### III. LAW AND ARGUMENT

A.  **Burden of Proof**

Beluga first attacks the documents submitted to the Court to support KLS' Motion to vacate the Order of Attachment notwithstanding that several of the documents were generated, prepared or produced by Plaintiff or its agents. For example, Attachment No. 1 to KLS' motion submitted by KLS to support it position that the Master admitted that the cause of any damage to the vessel, cargo or property was due to "heavy weather" is a document prepared and generated by Plaintiff's vessel Master. In addition, Attachment No. 6 to KLS' Motion is the Charter Party

3

Agreement prepared and provided to KLS by Plaintiff, which forms the basis of Plaintiff breach of contract claim, demand for damages and basis for Plaintiff's Ex Parte Request for An Order of Attachment. Attachment No. 7 to KLS' Motion consists of documents in the form of fax transmissions prepared and generated by plaintiff's counsel to KLS regarding the London arbitration.

B.   **Beluga Has Not Made a Prima Facie Admiralty Claim**

Beluga argues that it has a prima facie admiralty claim and should be allowed to prove its case either in the London arbitration or before this court. Further, Beluga argues that KLS' defenses of act of God or contibritory negligence on the part of the vessel and its Master are also issues not relevant in KLS' Motion to vacate the Order of attachment.

Even though this court has held that, a Plaintiff is not required to prove its case and simply has to meet its prima facie standard, *Proshipline Inc.. v. Aspen Infrastructures Ltd.* 533 F.Supp.2d 422 (S.D.N.Y.,2008), this same court has also held that even "[i]f the plaintiff carries the burden of showing that an attachment satisfies the requirements, the district court may still vacate the attachment if the defendant can show that '1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." Citing Aqua Stoli Shipping Ltd., 460 F.3d at 436. KLS continues to maintain that Plaintiff has not sufficiently plead an admiralty claim and that if it did, this court has discretion to vacate the attachment by KLS demonstrating that it can be found in this court's jurisdiction or a convenient adjacent jurisdiction.

As KLS stated in its Motion, the underlying dispute is based upon a charter party between Beluga as an operator of a vessel and KLS as a charterer of the vessel. Pursuant to the charter party, in November 2007, Beluga transported KLS's shipment from Map Taphud, Thailand and Masan, Korea to Point Lisas, Trinidad Tobago. During the voyage from Map Taphud to Masan,

the vessel encountered a heavy weather. The Statement of Sea Protest by the master of the vessel states that the vessel encountered a heavy weather while crossing South China Sea. See Declaration of N.S. Cho and Attachment No. 1 thereto, which consist of a true and correct copy of the Sea Protest prepared by the Master of the Beluga Constitution. The Sea Protest in no way mentions that the cause of the damage was due to insufficient lashing and bracing by KLS. In fact, the Beluga's Verified Complaint also admits that the vessel encountered a typhoon. See Beluga's Complaint ¶ 11. Beluga knew or should have known that a typhoon was expected in the vessel's route. However, the vessel sailed through a tropical typhoon, although the typhoon might have been forecasted. KLS believes that the only reason Beluga sailed through the expected typhoon was because the shorter the voyage, the more lucrative it would be for Beluga. If there was any damage to the vessel, it was the result of Beluga's own negligence.

Further, if there was any damage to the vessel, it was because of an act of God, for which KLS is not liable or responsible. For example, the pre and after loading survey at the port of Map Taphud states that:

> Cargo Condition Inspection
>
> Jointly together with the vessel's Chief Officer, we carefully inspected the condition of the aforesaid cargo prior to loading and found that all packages appeared to be in generally sound condition subject to customary for this type of cargo.
>
> The survey report further states that:
>
> Lashing/Securing
>
> . . .
>
> Jointly together with the vessel's Chief Officer and the Stevedore Foreman, we carefully inspected the stowage and lashing of the four shipment in cargo hold throughout the loading and we found the operation have to be carried out in a satisfactory way.
>
> Stowage, [L]ashing and securing was carried out by professional stevedores under close supervision of all concerned parties, in an effective and efficient manner.

5

Map Ta Phut Survey Report. See Attachment No. 2, which consist of a true and correct copy of the relevant pages of the Map Ta Phut Surevy Report. The securing and lashing was performed at the port of loading under a joint supervision with the vessel's Chief Officer and its' crew. If there was any damage to the vessel during the voyage, it resulted from an act of God or Beluga's reckless sailing of the vessel during and through the tropical typhoon. See Declaration of N. S. Cho and Attachments thereto.

In view of the above, Beluga does not have a prima facie maritime claim against KLS. Consequently, KLS respectfully requests that the Court vacate the attachment of KLS's funds.

### C. KLS can be found in the District and Also Agrees to Personal and Subject Matter Jurisdiction.

Beluga argues that the attachment should not be vacated because KLS cannot show that it is conducting or transacting business in this District and the fact it has an agent for service of process is irrelevant. However, KLS disagrees.

As stated above, even "[i]f the plaintiff carries the burden of showing that an attachment satisfies the requirements, the district court may still vacate the attachment if the defendant can show that '1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." KLS has agreed to submit to the jurisdiction of this court in the event Plaintiff agrees to waive London arbitration. KLS, through its counsel, conveyed its intent to pursue arbitration in London or to waive London arbitration and submit to this Court's jurisdiction, both in personam and subject matter. Plaintiff's counsel has confirmed that it has received KLS' offer to litigate this matter before this Court and is waiting to receive a response from Plaintiff Beluga.

Notwithstanding the above, KLS submits that it can be found in a convenient adjacent jurisdiction where it conducts business through International Express Shipping, Co., Ltd., located in Jamaica Queens, New York. See Declaration of N. S. Cho in Support of Defendant's Motion to Vacate Ex Parte Order of Attachment.

E.   London Arbitration Precludes Attachment for Security

Plaintiff argues that the London arbitration proceeding should not preclude Plaintiff from continuing the Ex Parte Order of Attachment. In addition, Plaintiff seeks to maintain the Ex Parte Order of Attachment and continue the SDNY action while also pursuing the London arbitration.

KLS has not abandoned the London arbitration and has conveyed to Plaintiff's counsel that KLS intends to arbitrate in London. Counsel for Plaintiff has confirmed KLS's intent to pursue London arbitration. In the meantime, KLS has agreed to submit to this Court's jurisdiction in the event that Plaintiff also agrees to waive London Arbitration. If Plaintiff does not agree to waive London arbitration, KLS respectfully request that this court consider that U.S. law may not apply to this action because the parties had agreed in the charter party agreement that English law would apply and London would be the place to arbitrate their respective disputes. If this is the case, KLS respectfully request that this Court consider the implicating issues of international comity. See *OGI Oceangate Transportation Co., Ltd., v. R.P. Logistics Pvt Ltd., et. al.* 2007 U.S. Dist. Lexis 46817, 6-7 (S.D.N.Y. 2007), J. Sweet, presiding. (*internal citations omitted*). That case indicated that, "proper consideration of international comity principles require evaluation of various factors, 'such as the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United

7

States, and the connection between the litigation and the foreign jurisdiction.'" Id. at 7. KLS submit that when that this Honorable Court considers these comity factors, the convenience issue favors vacating the attachment. Again, KLS is at a lost as to why plaintiff would argue in favor of proceeding with the expense of London arbitration and at the same time to pursue expense of this litigation.

F.   KLS' Request for Security for KLS' Counterclaim.

KLS received a claim for damages from its largest customer, Samsung Engineering Co., Ltd. In Samsung's claim, it alleges that KLS caused significant damage to Samsung's cargo which was transported on the Beluga Constitution and which is subject of this action and London arbitration. Samsung is seeking damages in the amount of $3,185,000.00, which includes damage to the cargo, expenses as a result of delays, freight and other damages. See Attachment 1, Declaration of N. S. Cho in Support of Defendant's Motion to Vacate Ex Parte Order of Attachment at 7.

Rule E (7)(a) of the Supplemental Rules for Admiralty and Maritime Claims provides that, "a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for dmages demanded in the counterclaim unless the court, for cause shown, directs otherwise. The Rule further provides that, "[p]roceedings on the original claim must be stayed until this security is given, unless the court directs otherwise." Rule E (7)(a), Security on Counterclaim, Supplemental Rules Supplemental Rules for Admiralty and Maritime Claims.

KLS submit that the counterclaim that KLS will file against Plaintiff's original claim against KLS derives from the same transaction that is subject of Plaintiff's claim against KLS.

8

KLS' answer to Plaintiff's complaint will include a counterclaim for indemnification and contribution as a result of Plaintiff's negligence in the navigation of the vessel the Beluga Constitution, Therefore, KLS respectfully request that the Court require Plaintiff to provide security in the amount of $3,185,000.00 pursuant to Rule E (7)(a).

CONCLUSION

Based on the above, KLS respectfully request that the Court vacate the Ex Parte Order of Attachment and require Plaintiff to post security in the amount of $3,185,000.00 to cover KLS' counterclaim for indemnification and contribution.

Dated: August 5, 2008

Respectfully submitted,

By: *[signature]*

Henry P. Gonzalez, LL.M. (HPG 9238)
**RODRIGUEZ O'DONNELL GONZALEZ and WILLIAMS, P.C.**
1211 Connecticut Ave., N.W., Suite 800
Washington, D.C. 20036
(202) 973-2980   Telephone
(202) 293-3307   Facsimile

Attorneys for Defendant, Korean Logistics Systems Inc.

## Certificate of Service

I hereby certify that on August 5, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM-ECF system which we will send a notice of electronic filling to all participating counsel of record.

_/s/ Henry P. Gonzalez_
_____
Henry P. Gonzalez, LL.M.*
Rodriguez, O'Donnell
  Gonzalez & Williams, P.C.
1211 Connecticut Ave., N.W., Suite 800
Washington, DC 20036
202-973-2980   Direct Dial
202-293-3307   Facsimile