UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BELUGA CHARTERING GMBH,

                Plaintiff,             08 Civ. 4896

    -against-                  OPINION

KOREA LOGISTICS SYSTEMS INC.,

                Defendant.

------------------------------------X

A P P E A R A N C E S:


      Attorneys for Plaintiff

      GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
      One Shell Square
      701 Poydras St.
      40th Floor Suite 4040
      New Orleans , LA 70139
      By:  Jason Waguespack, Esq.

      CONDON & FORSYTH LLP
      7 Times Square, 18th Floor
      New York , NY 10036
      By:  Lili F. Beneda, Esq.


      Attorneys for Defendant

      RODRIGUEZ O'DONNELL GONZALEZ & WILLIAMS, P. C.
      1211 Connecticut Avenue, NW, Suite 800
      Washington , DC 20036
      By:  Henry P. Gonzalez, Esq.

**Sweet, D. J.**

Defendant Korea Logistics Systems Inc. ("KLS" or the "Defendant") has moved by letter motion pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules") to vacate the attachments obtained by the plaintiff Beluga Chartering GMBH ("Beluga" or the "Plaintiff") and, under Rule E(7) of the Supplemental Rules, for countersecurity on its counterclaims. Upon the facts and conclusions set forth below, the motion of KLS to vacate the attachments and for countersecurity is denied.

## I.    PRIOR PROCEEDINGS

On May 28, 2008, Beluga filed a Verified Complaint under Rule B against KLS for damages sustained due to KLS' breach of charter and seeking security under Rule B. An Ex Parte Order for Process of Maritime Attachment was issued by this Court on that same date ordering any garnishees within the Southern District of New York holding tangible or intangible property of KLS to restrain such property up to an amount including $1,101,615.20.

1

On June 26, 2008, Beluga received notification from
Deutsche Bank advising that funds for KLS in the amount of
$136,297.13 had been restrained pursuant to the Process of
Maritime Attachment & Garnishment issued by this Court.  On June
27, 2008, Beluga received notification advising that additional
funds of KLS had been attached in the amount of $297,801.37.
Again on June 30, 2008, KLS' funds in the amount of $79,980.00
were restrained by Standard Chartered Bank.  The amount of funds
restrained to date total $514,078.50.

Subsequently, Beluga notified KLS of the attachments
and KLS filed a motion to vacate the attachments and for
countersecurity which was marked fully submitted on August 6,
2008.

## II.  **FACTS**

The underlying dispute is based upon a charter party
between Beluga as an operator of a vessel and KLS as a charterer
of the vessel.  Pursuant to the charter party, in November 2007,
Beluga transported KLS' shipment from Map Taphud, Thailand, and
Masan, Korea, to Point Lisas, Trinidad and Tobago.  During the
voyage from Map Taphud to Masan, the vessel experienced numerous
"gross waves" as well as high seas and storm force winds.

2

Compl. ¶ 11. Beluga has alleged damages, including vessel damage, demurrage, port of refuge expenses, deviation and bunker expenses arising out of the alleged failure of KLS to properly load and stow the cargo. Id. ¶ 15.

## III. THE MOTION TO VACATE THE ATTACHMENTS IS DENIED

### A.    Applicable Standard

In a Rule E(4)(f) inquiry challenging a Rule B attachment, in addition to demonstrating that it has met the filing and service requirements, a plaintiff has the burden to show that (1) it has a prima facie admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

On this motion KLS seeks to vacate the attachments on the grounds that (1) Beluga does not have a prima facie admiralty claim, (2) defendant KLS can be found in this District, and (3) the ongoing London arbitration precludes the attachments.

3

## A. Beluga Has a Prima Facie Admiralty Claim

"Following Aqua Stoli, the majority of courts in this
district have held that the standard for determining whether a
plaintiff has asserted a 'prima facie admiralty claim' is the
'prima facie standard,' rather than the more demanding 'fair
probability' or 'reasonable grounds' standards." Padre
Shipping, Inc. v. Yong He Shipping, 553 F. Supp. 2d 328, 331-32
(S.D.N.Y. 2008). To constitute a valid admiralty claim under
the "prima facie standard," the claim must fall within the
admiralty jurisdiction of the federal courts. See Dolco Inv.,
Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 266 (S.D.N.Y.
2007). There is some disagreement within this District as to
whether the question of the claim's further "validity" is
governed by federal law, see Harley Mullion & Co. Ltd. v.
Caverton Marine Ltd., 08 Civ. 5435 (BSJ), 2008 WL 4905460, at
*2-3 (S.D.N.Y. Aug. 7, 2008) (expressing the view that federal
law should govern, but noting that plaintiffs had failed to meet
their burden under U.S. or English law), or the substantive law
that will govern the underlying action. See Sonito Shipping
Co., Ltd. v. Sun United Mar. Ltd., 478 F. Supp. 2d 532,
(S.D.N.Y. 2007) ("The existence vel non of a valid maritime
claim for purposes of a Rule B writ of attachment turns upon the

4

applicable substantive law . . . ."). In either case, the
plaintiff need not present evidence to support his claim, but
the complaint must contain factual allegations to meet the
heightened pleading standard of Supplemental Rule E(2)(a), which
requires that the complaint "state the circumstances from which
the claim arises with such particularity that the defendant or
claimant will be able, without moving for a more definite
statement, to commence an investigation of the facts and to
frame a responsive pleading." Padre Shipping, 553 F. Supp. 2d
at 332.


        Beluga must first show that it has "an in personam
claim against the defendant which is cognizable in admiralty . .
. . In other words, the plaintiff's claim must be one which
will support a finding of admiralty jurisdiction under 28 U.S.C.
§ 1333." Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268
(2d Cir. 2002) (alteration in original) (quoting Robert M.
Jarvis, An Introduction to Maritime Attachment Practice Under
Rule B, 20 J. of Mar. L. and Comm., No 4, at 526 & n.20 (Oct.
1989)). A contract dispute arising from a "maritime contract"
falls within the federal courts' admiralty jurisdiction. CTI-
Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d
377, 379 (2d Cir. 1982). Beluga has alleged damages in this
case arising from KLS' actions or inactions that resulted in a

breach of the charter party. See Compl. ¶¶ 5-16. "Traditional texts have defined a 'maritime' contract as one that, for example, relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment . . . ." Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 572 (2d Cir. 2005) (quoting CTI-Container Leasing Corp., 682 F.2d at 379 (alteration in original, quotation omitted)). A charter party, such as that which is sued on here, falls squarely within the definition of a maritime contract. See Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991) ("It is well-established that a charter party agreement is a maritime contract.").

As regards the validity of Beluga's claim, it is unnecessary to resolve the question of whether the underlying substantive law or federal law governs, as KLS has failed to demonstrate any legal infirmity in Beluga's claim under either English or federal admiralty law. KLS' argument that Beluga has failed to state a prima facie case relies on factual assertions that any damage to the vessel resulted from Beluga's own negligence or an act of God. See Letter Motion 2. Such factual contentions do not bear on the prima facie validity of Beluga's claim. See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006) ("[I]t

would defeat the purpose of attachment-preserving defendants'
assets in case plaintiff is able to prevail at trial or on
summary judgment-to require at this stage that plaintiffs
asserting a 'valid prima facie maritime claim' prove that the
facts in the complaint are true."). Beluga has demonstrated
that it maintains a prima facie admiralty claim against KLS.

## B.   KLS Cannot be Found in the District

"The Admiralty Rules do not define the expression
'found within the district.'" Seawind Compania, S.A. v.
Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963). The
Second Circuit has held that the Rule requires "a two-pronged
inquiry: First, whether [the defendant] can be found within the
district in terms of jurisdiction, and second, if so, whether it
can be found for service of process." Id.; see also Marimed
Shipping Inc. v. Persian Gulf Shipping Co., Inc., 567 F. Supp.
2d 524, 526 (S.D.N.Y. 2008). "Under this framework, a maritime
attachment will be vacated if the defendant has sufficient
contacts with the district so that it is found in the district
in the jurisdictional sense and has an agent in the district
upon whom service of process could be delivered." Stolt Tankers
B.V. v. Geonet Ethanol, LLC, 08 Civ. 4382 (SAS), 2008 WL
4829944, at *2 (S.D.N.Y. Nov 6, 2008).

To demonstrate that it is found within this District, KLS points to its tariff and bond filed with the Federal Maritime Commission ("FMC"), its registration as a non-vessel operating common carrier ("NVOCC"), and its designation of Smart Cargo Service as an agent for the purpose of complying with FMC regulations. KLS does not, however, contend that it is registered to do business in the State of New York, or that it actually conducts or conducted business in this District at the time of attachment sufficient to subject it to the jurisdiction of this Court. KLS alleges that its "website shows that it has an office in New York," which "provides exactly the same address and contact information for KLS' designated agent for service of process." See Letter Motion 3. KLS also submits, by declaration, that "has maintained an office in New York since July 2001, through an agent and affiliated company, K.L.S. America, Inc." and that it "transacts and conducts business in New York through International Express Shipping Co., Ltd. with the same address as K.L.S. America, Inc., an active New York corporation." Decl. of N.S. Cho in Support of Def.'s Mot. to Vacate Ex Parte Attachment Order ("Cho Decl.") ¶¶ 2-3. Although Smart Cargo Service and K.L.S. America Inc. are companies listed with New York's Secretary of State operating at 145-11 155th St., Jamaica, New York 11434, these companies are separate and apart

8

from KLS.  According to Beluga, KLS itself maintains no presence
in this District and is not registered to do business within the
State of New York.

As such, even if KLS has properly designated a legal
agent in Jamaica, New York, it has not shown that it can be
found within the Southern District of New York because it has
not alleged that it has "engaged in sufficient activity in the
district to subject it to jurisdiction even in the absence of a
resident agent expressly authorized to accept process."
Seawind, 320 F.2d at 582.

## C.    The Pending London Arbitration Does Not
##       Preclude the Attachments

KLS also argues that the attachments are improper
because Beluga is pursuing arbitration of its claim in London.
London arbitration was agreed to in the charter, and Beluga
agrees that it has initiated arbitration there.  However, it is
well established that this Court has the power to order
provisional relief pending a foreign arbitration.  Compania de
Navegacion y Financiera Bosnia S.A. v. Nat'l Unity Marine
Salvage Corp., 457 F. Supp. 1013, 1014 (S.D.N.Y. 1978).  KLS has
cited no authority to the contrary.

9

The arbitration clause at issue in this case places
the dispute within the bounds of the United Nations Convention
on the Recognition and Enforcement of Foreign Arbitral Awards
(the "Convention"), 3 U.S.T. 2517, T.I.A.S. No. 6997, as
implemented by section 201-08 of the Federal Arbitration Act, 9
U.S.C. §§ 201-08. Although the Convention does not explicitly
authorize attachment in admiralty cases, "courts have
consistently held that in admiralty cases under the Convention,
a party can obtain a writ of attachment." China Nat'l Metal
Prods. Import/Export Co. v. Apex Digital, Inc., 155 F. Supp. 2d
1174, 1180 (C.D. Cal. 2001). See E.A.S.T. Inc. of Stamford,
Connecticut v. M/V Alaia, 876 F.2d 1168, 1173 (5th Cir. 1989);
Atlas Chartering Servs. V. World Trade Group, 453 F. Supp. 861,
863 (S.D.N.Y. 1978); Andros Compania Maritima, S.A. v. Andre &
Cie, S.A., 430 F. Supp. 88, 91-92 (S.D.N.Y. 1977); see also The
Anaconda v. Am. Sugar Refining Co., 322 U.S. 42, 46 (1943)
(noting that, by enactment of Section 8 of the Federal
Arbitration Act, "Congress plainly and emphatically declared
that although the parties had agreed to arbitrate, the
traditional admiralty procedure with its concomitant security
should be available to the aggrieved party without in any way
lessening his obligation to arbitrate his grievance rather than
litigate the merits in court").

## IV. KLS' REQUEST FOR SECURITY ON ITS COUNTERCLAIM IS DENIED

On August 13, 2008, KLS filed a counterclaim for indemnity from Beluga on a claim by Samsung Engineering Co, Ltd. ("Samsung") for damage to the cargo that is the subject of this action, in the amount of $3,185,000. Def.'s Ans. and Affirmative Defenses to Verified Compl., and Counterclaim ¶¶ 41-62. In its reply brief, KLS requests that the Court require Beluga to provide security on this counterclaim. See Reply 8-9.

Rule E(7)(a) states, in relevant part:

> When a person has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. . . .

"Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions." Result Shipping Co. v. Ferruzzi Trading, 56 F.3d 394, 399 (2d Cir.1995)

11

(citations omitted). "In exercising this discretion, the court should be guided primarily by two principles": (1) countersecurity is intended "to place the parties on an equality as regards security," and (2) countersecurity is not intended "to impose burdensome costs on a plaintiff that might prevent it from bringing suit." Id. at 399-400 (quotation omitted).

KLS' request for counter-security relies on its allegation that it has "received a claim for damages" from Samsung. Answer ¶ 53. KLS has also submitted a letter from Samsung's CEO requesting compensation Samsung's damages and asserting: "[i]f no appropriate actions are taken, we shall deal with this case using all available means and methods." Cho Decl. Ex. 9.

"In general, courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests for attachments." Sonito, 478 F. Supp. 2d at 540. KLS does not assert that it has made any payment to Samsung, or even that Samsung has initiated an action against KLS. As such, KLS' indemnity claim is unripe, and therefore not a valid prima facie maritime claim within the meaning of Rule B. See Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp., 536 F. Supp. 2d 362, 366-67 (S.D.N.Y. 2008) (holding that indemnity

12

claim was not ripe until the underlying claim had been paid);
J.K. Int'l, Pty., Ltd. v. Agriko S.A.S, No. 06 Civ. 13259 (KMK),
2007 WL 485435, at *4-5 (S.D.N.Y. Feb. 13, 2007) (declining to
continue attachment based on charterer's unripe indemnity claims
against cargo receivers in absence of evidence that shipowner
intended to press a demurrage claim against charterer);
Bottiglieri Di Na Vigazione Spa v. Tradeline LLC, 472 F. Supp.
2d 588, 590 (S.D.N.Y. 2007) (vacating order of attachment
relying on indemnity claims including potential liability, fees
and costs of ongoing arbitrations); Eitzen Sealift A/S v.
Cementos Andinos Dominicanos, SA, No. 05 Civ. 4550 (DC), 2005 WL
2218025, at *2 (S.D.N.Y. Sept. 9, 2005) (holding that indemnity
claim relying on "the London arbitration" where no arbitration
had been initiated was too speculative to support attachment).

        KLS has failed to establish that this is one of those
"isolated cases" in which the Court should overrule the
objection that its claims are not yet ripe, see Greenwich
Marine, Inc. v. S.S. Alexandria, 339 F.2d 901, 906 (2d Cir.
1965) (describing cases in which attachments had been granted
notwithstanding the immaturity of the underlying action), and
KLS' argument that its counterclaim is in fact one for
negligence is unavailing. See Bottiglieri, 472 F. Supp. 2d at

590-91 (rejecting attempt to characterize unripe indemnity claim
as contract claim).

Because KLS' indemnity claim is unripe, KLS has not
established a basis for countersecurity.

**V.   CONCLUSION**

For the reasons set forth above, the KLS motion to
vacate the attachment and for countersecurity is denied.   This
action will be stayed pending the London arbitration, subject to
any further motions.

It is so ordered.

**New York, N.Y.**
**December   4   , 2008**

ROBERT W. SWEET
**U.S.D.J.**

14